GARY M. RESTAINO
United States Attorney
District of Arizona
HEATHER SIEGELE
JARED KREAMER HOPE
Assistant U.S. Attorneys
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone:  520-620-7300
Email: heather.siegele@usdoj.gov
          Jared.kreamer.hope@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR 21-01042-6-JCH-DTF |
|---|---|
| Plaintiff, | PLEA AGREEMENT |
| vs. | |
| Rudolf Juan Zazueta, | (Fast Track U.S.S.G. § 5K3.1) |
| Defendant. | |

The United States of America and the defendant agree to the following disposition of this matter:

## PLEA

The defendant agrees to plead guilty to Count 1 of the Indictment charging the defendant with a violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(I), 1324(a)(1)(A)(ii), 1324(a)(1)(A)(iii), and 1324(a)(1)(B)(i), Conspiracy to Transport or Harbor Illegal Aliens for Profit, a felony. All other counts will be dismissed at the time of sentencing.

## ELEMENTS OF THE OFFENSE AND SENTENCING FACTOR

1.      There was an agreement between two or more persons to commit the offense of transporting or harboring illegal aliens in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii), and 1324(a)(1)(A)(iii), that is, there was an agreement that all or some of the co-conspirators, knowing or in reckless disregard of the fact that aliens had come to, entered, or remained in the United States in violation of law, would knowingly transport such aliens within the United States by means of transportation or otherwise, or

1    conceal, harbor, and shield from detection such aliens within the United States in

2    furtherance of such violation of law.

3        2.    The defendant became a member of the conspiracy knowing that the object

4    of the conspiracy was the transportation or harboring of illegal aliens and the defendant

5    intended to accomplish said object for the purpose of private financial gain or commercial

6    advantage.

7                    STIPULATIONS, TERMS AND AGREEMENTS

8                            Maximum Penalties

9        A violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(I), 1324(a)(1)(A)(ii), 1324(a)(1)(A)(iii)

10   and 1324(a)(1)(B)(i), is punishable by a maximum fine of $250,000.00, or a maximum

11   term of imprisonment of ten (10) years, or both, plus a term of supervised release of three

12   years and a special assessment of $100. The special assessment is due and payable at the

13   time the defendant enters the plea of guilty, and must be paid by the time of sentencing

14   unless the defendant is indigent. If the defendant is indigent, the special assessment will

15   be collected according to Title 18, United States Code, Chapters 227 and 229.

16       The defendant will pay upon conviction an additional $5,000 special assessment

17   pursuant to 18 U.S.C. § 3014(a), unless the Court determines that the defendant is indigent.

18                        Agreements Regarding Sentence

19       1.    Guideline Calculations: Although the parties understand that the Guidelines

20   are only advisory and just one of the factors the Court will consider under 18 U.S.C. §

21   3553(a) in imposing a sentence, pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties

22   stipulate and agree that the below guideline calculations are appropriate for the charge for

23   which the defendant is pleading guilty:

24
| Base Offense Level: | 2L1.1(a)(3) | 12 |
| Number of Aliens: | 2L1.1(b)(2) | +3 |
| Prior Felony Immigration Conviction(s): | 2L1.1(b)(3) | +2 |
| Unaccompanied Minor: | 2L1.1(b)(4) | +4 |
| Substantial Risk of Bodily Harm: | 2L1.1(b)(6) | +2 |
| Acceptance of Responsibility: | 3E1.1(a)&(b) | -3 |
| Early Disposition/Government Savings: | 5K3.1/5K2.0 | -2 |
| Total Adjusted Offense Level: | | 18 |

- 2 -

2.   <u>Sentencing Range</u>: Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the government and the defendant stipulate and agree that the following are the applicable guideline ranges for the offense, based on the defendant's criminal history category (CHC):

| | |
|---|---|
| CHC I: | a sentencing range of 27-33 months of imprisonment. |
| CHC II: | a sentencing range of 30-37 months of imprisonment. |
| CHC III: | a sentencing range of 33-41 months of imprisonment. |
| CHC IV: | a sentencing range of 41-51 months of imprisonment. |
| CHC V: | a sentencing range of 51-63 months of imprisonment. |
| CHC VI: | a sentencing range of 57-71 months of imprisonment. |

3.   The defendant may withdraw from the plea agreement if he/she receives a sentence that exceeds the stipulated ranges listed above.

4.   If the defendant moves for any adjustments in Chapters Two, Three or Four of the Sentencing Guidelines or any "departures" from the Sentencing Guidelines, the government may withdraw from this agreement.  If the defendant argues for a variance under 18 U.S.C. § 3553(a) in support of a sentence request below the stipulated range in this agreement, the government may oppose the requested variance.  The government, however, will not withdraw from the agreement if the defendant argues for, and the Court grants, a variance below the stipulated range in this agreement.

5.   The parties agree that the defendant was an average participant in the offense for the purpose of role analysis under U.S.S.G. §§ 3B1.1 and 3B1.2.

6.   If the Court, after reviewing this plea agreement, concludes any provision is inappropriate under Fed. R. Crim. P. 11(c)(5), it may reject the plea agreement, giving the defendant, in accordance with Fed. R. Crim. P. 11(d)(2)(A), an opportunity to withdraw the defendant's guilty plea.

7.   The defendant recognizes that pleading guilty may have consequences with respect to his/her immigration status if defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty.  Removal and other immigration consequences may be the subject of a separate judicial or administrative proceeding, and the defendant has discussed the direct and collateral implications this plea agreement may have with his or

- 3 -

1   her defense attorney.  Defendant nevertheless affirms that he/she wants to plead guilty

2   regardless of any immigration consequences that this plea may entail, even if the

3   consequence is defendant's automatic removal from the United States.

4                                                    Forfeiture

5            Nothing in this plea agreement shall be construed to protect the defendant from civil

6   forfeiture proceedings or prohibit the United States from proceeding with and/or initiating

7   an action for civil forfeiture.  Further, this agreement does not preclude the United States

8   from instituting any civil proceedings as may be appropriate now or in the future.

9                                                Plea Addendum

10           This written plea agreement, and any written addenda filed as attachments to this

11  plea agreement, contained all the terms and conditions of the plea.  Any additional

12  agreements, if any such agreements exist, shall be recorded in a separate document and

13  may be filed with the Court under seal.  Accordingly, additional agreements, if any, may

14  not be in the public record.

15                              Waiver of Defenses and Appeal Rights

16           Provided the defendant receives a sentence in accordance with this agreement, the

17  defendant waives any and all motions, defenses, probable cause determinations, and

18  objections that the defendant could assert to the information or indictment, or to the petition

19  to revoke, or to the Court's entry of judgment against the defendant and imposition of

20  sentence upon the defendant providing the sentence is consistent with this agreement.  The

21  sentence is in accordance with this agreement if the sentence imposed is within the

22  stipulated range or below the stipulated range if the Court grants a variance.  The defendant

23  further waives: (1) any right to appeal the Court's entry of judgment against defendant; (2)

24  any right to appeal the imposition of sentence upon defendant under 18 U.S.C. § 3742

25  (sentence appeals); (3) any right to appeal the district court's refusal to grant a requested

26  variance; (4) any right to collaterally attack defendant's conviction and sentence under 28

27  U.S.C. § 2255, or any other collateral attack; and (5) any right to file a motion for

28  modification of sentence, including under 18 U.S.C. § 3582(c) (except for the right to file

                                                    - 4 -

1    a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A) and to appeal the denial

2    of such a motion). The defendant acknowledges that this waiver shall result in the dismissal

3    of any appeal or collateral attack the defendant might file challenging his/her conviction or

4    sentence in this case. If the defendant files a notice of appeal or a habeas petition,

5    notwithstanding this agreement, defendant agrees that this case shall, upon motion of the

6    government, be remanded to the district court to determine whether defendant is in breach

7    of this agreement and, if so, to permit the government to withdraw from the plea agreement.

8    This waiver shall not be construed to bar an otherwise-preserved claim of ineffective

9    assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section

10   II.B of Ariz. Ethics Op. 15-01 (2015)).

11                              Reinstitution of Prosecution

12           Nothing in this agreement shall be construed to protect the defendant in any way

13   from prosecution for perjury, false declaration or false statement, or any other offense

14   committed by the defendant after the date of this agreement. In addition, if the defendant

15   commits any criminal offense between the date of this agreement and the date of

16   sentencing, the government will have the right to withdraw from this agreement. Any

17   information, statements, documents and evidence which the defendant provides to the

18   United States pursuant to this agreement may be used against the defendant in all such

19   proceedings.

20           If the defendant's guilty plea is rejected, withdrawn, vacated, or reversed by any

21   court in a later proceeding, the government will be free to prosecute the defendant for all

22   charges as to which it has knowledge, and any charges that have been dismissed because

23   of this plea agreement will be automatically reinstated. In such event, the defendant waives

24   any objections, motions, or defenses based upon the Speedy Trial Act or the Sixth

25   Amendment to the Constitution as to the delay occasioned by the later proceedings.

26   Defendant agrees that the stipulated sentencing ranges set forth under "Agreements

27   Regarding Sentence" will not be offered if prosecution is re-instituted.

28

- 5 -

<u>Disclosure of Information to U.S. Probation Office</u>

The defendant understands the government's obligation to provide all information in its file regarding defendant to the United States Probation Office.  The defendant fully understands and agrees to cooperate fully with the United States Probation Office in providing all information requested by the probation officer.

<u>Effect on Other Proceedings</u>

I further understand that if I violate any of the conditions of my supervised release, my supervised release may be revoked.  Upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence may otherwise be altered.

<u>WAIVER OF DEFENDANT'S RIGHTS</u>

I have read each of the provisions of the entire plea agreement with the assistance of counsel and understand its provisions.  I have discussed the case and my constitutional and other rights with my attorney.  I understand that by entering my plea of guilty I will be giving up my right to plead not guilty; to trial by jury; to confront, cross-examine, and compel the attendance of witnesses; to present evidence in my defense; to remain silent and refuse to be a witnesses against myself by asserting my privilege against self-incrimination; all with the assistance of counsel, to be presumed innocent until proven guilty beyond a reasonable doubt, and to appeal.  This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct."

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charge to which I am entering my guilty plea.  I have further been advised by my attorney of the nature and range of the possible sentence.

My guilty plea is not the result of force, threats, assurance or promises other than the promises contained in this agreement.  I agree to the provisions of this agreement as a

- 6 -

1  voluntary act on my part, rather than at the direction of or because of the recommendation
2  of any other person, and I agree to be bound according to its provisions.
3  I agree that this written plea agreement contains all the terms and conditions of my plea
4  and that promises made by anyone (including my attorney) that are not contained within
5  this written plea agreement are without force and effect and are null and void.
6       I am satisfied that my defense attorney has represented me in a competent manner.
7       I am not now on or under the influence of any drug, medication, liquor, or other
8  intoxicant or depressant, which would impair my ability to fully understand the terms and
9  conditions of this plea agreement.

10  <u>FACTUAL BASIS AND SENTENCING FACTOR</u>

11       I agree that the following facts accurately describe my conduct in connection with
12  the offense to which I am pleading guilty and that if this matter were to proceed to trial the
13  government could prove these facts beyond a reasonable doubt:

14
15       From a time unknown to December 31, 2020, I, Rudolf Juan Zazueta, knowingly conspired and agreed with co-defendant Manuel Ochoa-Vasquez and other persons known and unknown to transport illegal aliens for profit. I worked as a load driver and stash house operator, transporting and harboring illegal aliens as they were smuggled from locations near the border further north to Tucson or Phoenix. I knew the individuals were illegal aliens, and I intended to assist them in remaining in the United States unlawfully. I was paid for transporting the aliens. I transported or harbored at least six illegal aliens during this time.
16
17
18

19       On May 15, 2020, I conspired with a Mexican based smuggler and co-defendant Ochoa-Vasquez to transport an illegal alien for profit. I was to drive the illegal alien from the Tohono O'odham Nation to Phoenix where Ochoa-Vasquez would take custody of her and pay me $4,500 for driving. I was caught at the FR-15 immigration checkpoint with the illegal alien hidden in a locked toolbox in the bed of my truck. The agents noted that the lid of the toolbox was very heavy and that even if the illegal alien had been able to unlock the toolbox from inside, that it was unlikely she would have been able to lift the lid on her own.
20
21
22
23
24  On June 17, 2020, I conspired with Ochoa-Vasquez and others to harbor illegal aliens for profit. On that date, agents located seven illegal aliens inside my residence including two illegal aliens who were unaccompanied minors: S.O.-P. and M.P.-O.
25

26
27
28

- 7 -

1    I have read this agreement or it has been read to me in Spanish, and I have carefully

2  reviewed every part of it with my attorney.  I understand it, and I voluntarily agree to it.

4  Date: 1-4-2023

   Rudolf Juan Zazueta
5  Defendant

7                    DEFENSE ATTORNEY'S APPROVAL

8    I have discussed this case and the plea agreement with my client in detail and have

9  advised the defendant of all matters within the scope of Rule 11, Fed. R. Crim. P., the

10 constitutional and other rights of an accused, the factual basis for and the nature of the

11 offense to which the guilty plea will be entered, possible defenses, and the consequences

12 of the guilty plea, including the defendant's waiver of the right to appeal.  No assurances,

13 promises, or representations have been given to me or to the defendant by the government

14 or by any of its representatives which are not contained in this written agreement.  I concur

15 in the entry of the plea as indicated above and on the terms and conditions set forth in this

16 agreement as in the best interests of my client.  I agree to make a bona fide effort to ensure

17 the guilty plea is entered in accordance with all the requirements of Rule 11, Fed. R. Crim.

18 P.

19 Date: 1-4-2023

20
   Eric Manch
21 Attorney for Defendant

                              - 8 -

1

## GOVERNMENT'S APPROVAL

2       I have reviewed this matter and the plea agreement.  I agree on behalf of the United

3   States that the terms and conditions set forth are appropriate and are in the best interests of

4   justice.

5
                                        GARY M. RESTAINO
6                                       United States Attorney
                                        District of Arizona
7                                       JARED          Digitally signed by
                                        KREAMER        JARED KREAMER HOPE
                                                       Date: 2022.12.29
8                                       HOPE           10:52:29 -07'00'
        Date: _____
9                                       HEATHER SIEGELE
                                        JARED KREAMER HOPE
10                                      Assistant U.S. Attorneys

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28